### C. E. TAYNTOR GRANITE CO. v. GOETCHIUS et al.

(Circuit Court, S. D. New York. June 23, 1909.)

1. PATENTS (§ 328*)—NOVELTY—ROOF FOR MAUSOLEUMS.

The Tayntor patent, No. 722,392, for a roof for mausoleums, construed, and *held* void for lack of novelty in view of the prior art.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. EXECUTORS AND ADMINISTRATORS (§ 430*)—ACTION—PERSONAL OR REPRESENTATIVE CAPACITY.

A suit cannot be maintained against the executors of a decedent for infringement of a patent in the construction of a mausoleum in which the body of their decedent was placed, where it was contracted and paid for by them and others individually, and not as executors, and the estate is not the owner of the same.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 430.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. On final hearing.

D. Frank Lloyd (E. Hayward Fairbanks, of counsel), for complainant.

George C. Dean, for defendants.

HOUGH, District Judge. Shortly before the filing of this bill the children of John M. Goetchius, deceased, late of this city, contributed in unequal shares a sum of money sufficient to erect a family mausoleum or burial vault in a cemetery situated in Westchester county, N. Y. The mausoleum was completed before this litigation began, and the remains of Mr. Goetchius are there entombed. There is room in the vault, however, for other caskets, and it is in evidence that any member of the family may be placed there after death. Although the money to pay for this mausoleum was contributed by a number of the members of the family, the contractual responsibility for erecting the same was assumed by Henry K. Goetchius, who alone signed the building contract. This action is brought against certain of the contributors who are the executors of Goetchius, Sr. It is against them as executors, and there are no other parties defendant. The bill alleges, in substance, that the roof of the mausoleum in question is constructed in violation of the complainant's right under patent No. 722,-392, granted March 10, 1903, and relating—

"to an improvement in roofs for mausoleums, vaults, and the like, with the object in view of providing an improved roof construction, in which the seams formed by the junction of the several parts of the roof will be well protected, so as to prevent the rain from driving through the said seams."

The second claim of this patent reads thus:

"A roof for mausoleums, vaults, and the like, comprising pediments, side roof stones having ribs along their inner top edges, and a central roof stone having lips along its opposite side edges, fitted to overlap the ribs upon the side roof stones, substantially as set forth."

The construction here claimed is confessedly exemplified in the Goetchius mausoleum, and consists of a roof whereof the portion exposed to the sky and to the vertical downpour of rain consists of three parts, to wit, two stones, one on each side of the edifice, the lower edge of each of which forms the side eaves of the building (so to speak), and the upper edge of which reaches nearly to the roof ridge. These stones are supported at the building's front and rear by the (so-called) triangular pediments there placed; the slope or pitch of the roof being determined by the apex angle of said pediments. These side roof stones are secured in place by a mortise and tenon arrangement, joining them to the pediments aforesaid at the building's front and rear, respectively.

It will be seen that the roof as thus far described presents the skyline of a simple house roof, with an open space where the ridge pole would ordinarily be. This open space is then filled in with a capstone (the "central roof stone" of the patent), extending solidly from front to rear, with its lower edges fitting against the upper edges of the roof stones aforesaid, resting at front and rear upon the pediments aforesaid, and also overlapping the said side roof stones to the extent of

the lips described in the claim above quoted, just as one shingle overlaps another. In the testimony this capstone is sometimes spoken of as a keystone. This is wholly inaccurate, for it is admitted that the capstone takes up no thrust, and it obviously performs none of the functions of a true keystone.

In my opinion the invention asserted to reside in this patent (in so far as this suit is concerned) consists solely in so cutting away the major portion of the exposed surface of the two side roof stones as to leave a rib or ridge along its upper outer edge and then resting the capstone lips upon said ridges or ribs, instead of upon the plane surface of the roof stones. This construction elevates the exposed line of joinder between capstone and roof stones above the general level of the sloping roof by just so much as the roof stones are cut away to form said ribs or ridges—in practice from $\frac{3}{4}$ of an inch to $1\frac{1}{4}$ inches. The construction of these lipped and ribbed roof stones is expensive, because it involves additional stone cutting. The advantage thereof rests solely in its preventing, or at all events retarding, the entrance of wind-driven rain into the edifice through the joints between capstone and roof stones by means of the raising of said joint or (what is the same thing) the depression of the roof plane by the aforesaid cutting away of the roof stones' surface.

If this patent be valid and not anticipated, it is not only admitted that the Goetchius mausoleum infringes it, but it is proven that said mausoleum was erected by one Harrison with full knowledge of Tayntor's patent, who agreed with Mr. H. K. Goetchius to defend any suit which might be brought thereon; and this suit is being defended by Harrison. To me there appear two reasons why this bill should be dismissed: First, because the patent, in view of the prior art, discloses no patentable novelty (assuming that invention resides therein); and, second, because these defendants are not liable for whatever infringement took place (if infringement there was).

Two burial vaults or mausoleums, whose erection and disclosure to public view antedate Tayntor's application, have been shown, wherein three-stone roofs were used, with the upper surfaces of the side roof stones cut away, so as to leave lips or ridges on their inner edges in conjunction with a capstone formed with lips resting on the ribs or ridges aforesaid (Black and Feigenspan). In each of these examples of the prior art the exposed jointure of side stones and capstones is removed from the direct action of the rain in the same way, and obviously for the same purpose, as in Tayntor's construction. But a slope or pitch is given to the roof, not by placing the side stones on the sides of triangular pediments, but by sloping the upper surfaces of the side stones themselves by progressively removing more material from the upper surface of the side stones as the stonecutter progressed from rib to eave. It is thus possible for the roof of the Black and Feigenspan mausoleums to rest flatly upon the frieze of the edifice, and no pediments (in the sense in which the word is used by Tayntor) are required.

Complainant, therefore, claims that his patent is for a five-stone construction—i. e., two pediments, two side stones, and one capstone—and that any one may erect a mausoleum with rib-raised and rib-pro-

tected jointures, provided he does not slope his roof by the use of triangular pediments. In an art as old as is the one under consideration, where great antiquity is indicated by the very name "mausoleum," a patent such as this cannot be given in my opinion a wide interpretation. If pitched roofs for edifices of this construction were new, or if the existence and degree of that pitch had not long been determined by the shape of the front and rear walls of buildings (above the eave line), there might be something in complainant's contention; but it is not true that that portion of the front or rear wall of any building which lies between the eave line as a base and the ridge pole as its apex is either necessarily a pediment, or even a part of the roof. It is a part of the wall, and is entitled to the name "pediment" only under circumstances succinctly set forth in the Century Dictionary (tit. "Pediment"). There were peaked roofs for mausoleums before Tayntor. Phelps' vault, French patent; French v. Carter (C. C.) 25 Fed. 41; Id., 137 U. S. 239, 11 Sup. Ct. 90, 34 L. Ed. 664. And, as above shown, there were ribbed joints before Tayntor, and in an ancient art I do not think that he can successfully assert patentable novelty in putting together these ancient constructions and incidentally calling the "pediment" a part of his roof.

On the second point mentioned I am of opinion that the proofs show that the executors of Goetchius did not build this mausoleum. They do not own it, nor does the estate of Mr. Goetchius own it. Neither the defendants, nor any of them, made any contract or did any act in respect of the mausoleum in question in his capacity as executor. This would be true, even if the edifice had been reared on private land; but it is alleged and proven to have been erected in a cemetery in the state of New York, and by the laws of this state a lot in such cemetery, when once used for purposes of interment, ceases to be property in the ordinary sense of the word. It can only be used for the further interment of persons of the kin of the original purchaser, in accordance with the rules of the cemetery and the provision of the deed of conveyance. Without the consent of the cemetery authorities, nothing can be erected thereon or removed therefrom. Since, therefore, the defendants did not put up this building, do not own it, cannot remove it, and have very obviously made no profit therefrom, and never will make any profit therefrom. I do not think that a bill in equity will lie.

The bill is dismissed, with costs.